UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

LIBERTY INSURANCE
CORPORATION,
                       Plaintiff,           17-CV-4398 (JPO)

           -v-                          OPINION AND ORDER

WSP USA, INC.,
                       Defendant.
───────────────────────────────

J. PAUL OETKEN, District Judge:

      Plaintiff Liberty Insurance Corporation filed this action against Defendant WSP USA, Inc. seeking a declaration that WSP's insurance policy does not obligate Liberty to defend WSP in a separate underlying lawsuit. Both parties have moved for summary judgment. For the reasons that follow, Liberty's motion is granted, and WSP's motion is denied.

**I.    Background**

      The following facts are taken from the parties' joint stipulation of facts and the operative complaint in the underlying action. These facts are undisputed unless otherwise noted.

      **A.    The Underlying Action**

      In 2001, the Washington State Department of Transportation ("WSDOT") hired WSP to evaluate the repair or replacement of the Alaskan Way Viaduct, a highway project in Seattle. (Dkt. No. 32-2 ("SOF") ¶ 8.)[1] Among other things, WSP agreed to develop an environmental impact statement and to perform "associated design work" for the viaduct project. (SOF ¶ 9.) WSP subcontracted with an engineering and land surveying company, Shannon & Wilson

---

[1] At the time, WSP was known as Parsons Brinckerhoff, Inc. (*See* SOF ¶¶ 1–2.)

("S&W"), to "conduct extensive geotechnical and hydrogeological exploration, tests, and studies" in the viaduct project area. (SOF ¶¶ 10, 12.)

In 2002, S&W, through its subcontractor, Holt Drilling, drilled and installed several water wells along the Alaskan Way Viaduct, including "Test Well # 2," which had an 8-inch diameter steel well casing. (SOF ¶ 13.) WSP and S&W then prepared several geotechnical reports associated with the viaduct project. (SOF ¶¶ 14, 28, 30.) Some of those reports were included in Washington's "Request for Proposal" package, in which the State sought a contractor to design, engineer, and construct a new bored tunnel to replace the Alaska Way Viaduct. (SOF ¶¶ 28, 33(d); STP AC ¶ 13.) But the reports failed to identify the 8-inch diameter steel well casing at Test Well #2 and incorrectly described Test Well #2 as having a "2-inch diameter PVC casing." (SOF ¶ 33(d).)

In 2011, WSDOT contracted with Seattle Tunnel Partners ("STP") for design, engineering, and construction services on the new bored tunnel project. (SOF ¶ 29.) STP purchased a tunnel boring machine and began tunneling work in 2013. (Dkt. No. 32-3 ("STP AC") ¶¶ 17, 26.) STP alleges that the machine struck the steel casing of Test Well # 2, which caused the damage to the machine. (SOF ¶ 33(i)–(k).)

STP sued WSP in Washington state court for professional negligence, negligent misrepresentation, and indemnification, to recover for the damage to its machine. (STP AC at 1; SOF ¶ 34.) In its professional negligence count, STP alleges that WSP (1) failed to properly indicate the existence and nature of Test Well #2 in its geotechnical documents; (2) inadequately memorialized the nature and type of installation involved in Test Well #2; and (3) failed to remove or otherwise properly decommission the test well following its abandonment or disuse. (SOF ¶¶ 37–39.) STP's negligent misrepresentation count alleges that WSP did not act with

2

reasonable care or competence in preparing its geotechnical baseline report, and that STP relied on inaccurate information in that report. (SOF ¶ 41.) The indemnification count alleges that WSP breached a "special duty to STP" by failing to provide information concerning Test Well #2 in the geotechnical baseline report. (SOF ¶ 43.)

### B.     The Liberty Commercial General Liability Insurance Policy

Liberty issued a commercial general liability insurance policy to WSP for the period from October 1, 2013, to October 1, 2014. (SOF ¶ 50.) Under the policy, Liberty has a duty to defend WSP against any suit seeking damages due to "property damage" if, and only if, the insurance "applies." (SOF ¶¶ 52–53.) The policy contains a "professional liability" exclusion, which states: "This insurance does not apply to . . . 'property damage' . . . arising out of the rendering or failure to render any professional services by you or on your behalf" with respect to "providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor." (SOF ¶ 54.) Professional services include: "[p]reparing, approving, or failing to prepare or approve, maps, shop drawings opinions, reports, surveys, field orders, change orders, or drawings and specifications," and "supervisory or inspection activities performed as part of any related architectural or engineering activities." (SOF ¶ 57.) However, "construction contractor" services are explicitly excepted from the definition of professional services: "Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor." (SOF ¶ 57.)

In February 2017, WSP gave Liberty notice of STP's suit. (SOF ¶ 59.) Liberty replied that the allegations were broad enough to trigger a duty to defend under the policy, with the caveat that the "primary coverage issue" would be whether the "general liability policy specifically excludes coverage for professional services." (SOF ¶ 59.) Liberty reserved its rights

under the professional-liability exclusion and agreed, subject to that exclusion, to contribute to WSP's defense in the STP action pending resolution of the question whether the policy actually applies. (SOF ¶ 60.)

In June 2017, Liberty filed this action for declaratory judgment as to whether the STP action is excluded from coverage under the professional-liability exclusion. The parties now file competing motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lunds, Inc. v. Chem. Bank,* 870 F.2d 840, 844 (2d Cir. 1989)).

As the parties agree, New York law governs the interpretation of the insurance policy. (*See* Dkt. No. 30 at 10; Dkt No. 34 at 8.) "It is well-settled that, under New York Law, 'an insurer's duty to defend its insured is exceedingly broad." *City of New York v. Liberty Mut. Ins. Co.*, No. 15 Civ. 8220, 2017 WL 4386363, at *6 (S.D.N.Y. Sept. 28, 2017) (alterations omitted) (quoting *Regal Constr. Corp. v Nat'l Un. Fire Ins. Co. of Pittsburgh, PA,* 904 N.Y.S.2d 338 (2010)). "In assessing whether an insurance company has a duty to defend an insured, 'courts first look to 'the allegations within the four corners of the underlying complaint.' . . ." *JD2 Envtl., Inc. v. Endurance Am. Ins. Co.*, No. 14 Civ. 8888, 2017 WL 751157, at *3 (S.D.N.Y. Feb.

27, 2017) (quoting *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 506 (S.D.N.Y. 2010)).  "'If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend' . . . 'regardless of how false or groundless those allegations might be.'"  *Am. Home Assurance Co. v. Allan Window Techs., Ltd.*, No. 15 Civ. 5138, 2016 WL 4131843, at *4 (S.D.N.Y. Aug. 2, 2016) (first quoting *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989), second quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 306 (1984)).  And "even if the explicit language of the complaint does not trigger the duty to defend, 'courts must also look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence.'"  *JD2*, 2017 WL 751157, at *3 (quoting *Westport*, 746 F. Supp. 2d at 506).

If even "one claim is potentially covered by the insurance policy," it triggers the insurer's duty to defend the entire action.  *American Home*, 2016 WL 4131843, at *4 (quoting *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 95 Civ. 4845, 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996)).  "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014).

Where an insurer relies on an exception to the insurance policy to avoid defending the insured, the insurer bears the burden to show that "the allegations in the underlying complaint fall '*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'"  *JD2*, 2017 WL 751157, at *3 (emphasis in original) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 312 (N.Y. 1984)).  As such, "[a]n insurer seeking to avoid its duty to defend bears a heavy burden, which, in practice, is rarely met."

5

*Hotel Des Artistes, Inc. v. Transamerica Ins. Co.*, No. 93 Civ. 4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994).

**III.  Discussion**

The gravamen of this dispute is whether the allegations in the STP complaint fall within the professional-liability exclusion in Liberty's policy.  WSP concedes that some of the allegations in the STP complaint, especially the professional negligence allegations concerning the geotechnical reports, are subject to the professional-liability exclusion because they involved WSP's engineering expertise.  (*See, e.g.*, Dkt. No. 34 at 11.)  Therefore, because the professional liability exclusion is at least partially applicable, the key issue in this case can be framed even more narrowly: Does the "construction contractor" exception to the professional liability exclusion embrace any of STP's allegations?

The construction contractor exception exempts "[1] services within construction means, methods, techniques, sequences, and procedures [2] employed by you in connection with your operations [3] in your capacity as a construction contractor."  (SOF ¶ 57 (numbering added).)  The STP complaint alleges, among other things, that WSP "[f]ailed to remove or otherwise properly decommission [Test Well #2] following its abandonment or discontinued use."  (STP AC ¶ 72(b).).  WSP argues that this allegation falls within the construction contractor exception because it relates to work done as a construction contractor.

For the construction-contractor exception to apply, three conditions must be satisfied.  Starting with the third, WSP must have been acting in "its capacity as a construction contractor."  That term is not defined by the policy.  (*See* Dkt. No. 39 at 6.)  Consequently, the meaning of that term is a matter of law for the court to decide.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).  "When attempting to define a term, the 'insurance policy should be read in light of common speech and the reasonable expectations of a

businessperson.'" *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 934 F. Supp. 2d 533, 541 (E.D.N.Y.), *aff'd*, 542 F. App'x 89 (2d Cir. 2013) (quoting *Parks & Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)).

The first step is to assess whether "construction contractor" has an unambiguous meaning. *See Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 197 F. Supp. 3d 616, 623 (S.D.N.Y. 2016), *aff'd*, 880 F.3d 64 (2d Cir. 2018). "Policy terms are to be construed in accordance with their plain meaning, and to the extent there are any ambiguities in the these terms, such ambiguities must be resolved in favor of the insured." *Cont'l Cas. Co. v. JBS Const. Mgmt., Inc.*, No. 09 Civ. 6697, 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). If the contract term is unambiguous, the court "'should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence[,]' and it may then award summary judgment." *Id.* (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998)).

The term "construction contractor" has an unambiguous plain meaning, which is generally understood.[2] Put simply, a construction contractor is "a person or company that agrees to do work . . . for another company" that involves "act[s] of building." *See Contractor*, *Black's*

---

[2] Because the term is unambiguous, the Court does not resort to extrinsic evidence of its meaning. In fact, the parties have not provided any extrinsic evidence beyond the STP complaint and Liberty's policy document in support of their summary judgment motions.

*Law Dictionary* (10th ed. 2014); *Construction*, Black's Law Dictionary (10th ed. 2014); *cf. Continental Casualty*, 2010 WL 2834898, at *5 (construing plain meaning of the term "construction manager").

Liberty contends that none of WSP's alleged actions were taken in its "capacity as a construction contractor," rendering the exception to the professional liability exclusion inapplicable. (Dkt. No. 37 at 6.) The Court concludes that, under the plain meaning of "construction contractor," the absence of any contract between WSP and any other entity under which WSP was hired to build something[3] precludes WSP from invoking the construction-contractor exemption: one cannot be a construction contractor without a construction contract.

As alleged in the STP complaint, WSDOT engaged WSP "to assist in the process of *evaluating* the repair and/or replacement of the Viaduct, including the preparation of conceptual engineering studies." (STP AC ¶ 8 (emphasis added).) WSP and WSDOT entered into two agreements, neither of which was a construction contract. First, under "Agreement Y-7888," WSP was engaged to develop an environmental impact statement with associated design work and supplemental tasks for the Alaskan Way Viaduct. (SOF ¶ 9.) This agreement was later replaced with Agreement Y-9715, under which WSP agreed to perform "engineering, and other related work to accomplish individual tasks." (SOF ¶ 19 (alterations omitted).) These tasks included: (1) "develop[ing] preliminary engineering" for the viaduct program; (2) geotechnical data analysis; (3) "construction planning for the tunnel necessary to inform preliminary engineering"; and (4) drafting a geotechnical baseline report. (SOF ¶¶ 21–24.) Neither the

---

[3] Of course, the Court recognizes that the common understanding of "construction contractor" not only building, but also demolition. It is undisputed that WSP was not contracted to either construct or demolish anything.

agreements nor the task orders obligated WSP to build or construct anything; in other words, none of these contracts required WSP to act in the capacity of a construction contractor.

WSP contends that it was acting as a construction contractor when it allegedly failed to remove or otherwise decommission Test Well #2. (Dkt. No. 39 at 5.) But even if this alleged failure to act constitutes "services within construction means, methods, techniques, sequences, and procedures" (SOF ¶ 57), the fact that construction methods may have been involved is insufficient, by itself, to bring these allegations within the purview of the construction contractor exemption. The exemption also requires that any construction-related services be "employed . . . in connection with your operations in your capacity as a construction contractor." (SOF ¶ 57.) WSP's interpretation of the exemption, which makes its applicability wholly contingent on the kinds of services performed, would render the phrase "capacity as a construction contractor" superfluous. (*See* Dkt. No. 39 at 6 ("WSP construes [construction contractor]" to mean "work that can, is, or normally would be done by a construction contractor.").) The Court therefore rejects WSP's strictly work-based interpretation of the exemption.[4] *See Sayers v. Rochester Tel.*

---

[4] It is true that when interpreting "professional services" exclusions, courts have generally employed a functional approach "in determining whether a professional service is at issue." *Beazley*, 880 F.3d at 71. It is well established that the courts must evaluate "the nature of the conduct under scrutiny rather than the title or position of those involved" and decide whether the insured "acted with the special acumen and training of professionals" to determine the insured rendered professional services. *Id.* (quoting *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 934 F. Supp. 2d 533, 544 (E.D.N.Y.)). Relying on this principle, WSP contends that "[d]rilling a hole and installing a pipe" are "basic construction tasks" that fall within the construction-contractor exemption. (Dkt. No. 34 at 12.)

Although the nature of the conduct is an important consideration in evaluating whether an insurance exclusion applies, it is not the *exclusive* consideration under New York law. In addition to "the nature of the conduct," courts also examine "the underlying complaint" and "the contract under which [the insured] was to perform . . . services." *Reliance Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 691 N.Y.S.2d 458, 460 (App. Div. 1st Dep't 1999). Here, an examination of the contracts, in addition to the allegations in the STP complaint, confirms that WSP was not acting in a construction-contractor capacity.

*Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (explaining that courts should "safeguard against adopting an interpretation that would render any individual provision superfluous").

Given the nature of the Agreements and Task Orders issued by WSDOT, the Court concludes that WSP was acting in a professional engineering capacity when it created Test Well # 2 (and by extension, when WSP allegedly failed to decommission it). WSP contracted with S&W as its geotechnical consultant to "conduct extensive geotechnical and hydroecological explorations, tests, and studies in the vicinity of the anticipated project corridor." (SOF ¶ 10 (quoting STP AC ¶ 9).) Then, S&W subcontracted with Holt Drilling to install several water wells, including Test Well #2. (SOF ¶ 13.) Neither WSP nor S&W was ever engaged to construct or build anything; the drilling of the test well was incidental to their professional engineering activities. Holt Drilling was acting as a construction contractor, as it was hired by S&W to build its test well, just as STP was acting as a construction contractor when it was hired to build the new tunnel. But WSP and S&W were simply contracted to do geotechnical and hydrogeological explorations, tests, and studies. (STP AC ¶ 9.) *Cf. Admiral Ins. Co. v. Ford*, 607 F.3d 420, 426 (5th Cir. 2010) (concluding that professional services exclusion applied though "some of the breaching conduct was arguably non-technical in nature" because otherwise exclusion would be "almost meaningless since the implementation of a drilling plan invariably involves menial tasks"). In other words, the drilling and removing of the test well, while arguably "construction" services, were incidental to WSP's contract to perform professional engineering services. The absence of a contract between WSP and any other entity in which WSP is hired to build anything confirms that it was not acting in the capacity of "construction contractor."

The absence of a construction contract also distinguishes this case from *American Home Assurance Co. v. Allan Window Technologies, Ltd.*, the only case in this district to construe a similar construction-contractor exception.  There, the insured was contracted "for the design, manufacture, assembly, and installation of . . . window wall systems for a residential condominium building." 2016 WL 4131843 at *1. The underlying lawsuit against the insured alleged that the windows were defective, and the insurance company sought to avoid coverage under a similar "professional services" exclusion. *Id.* at *2, *6. The court concluded that the insured's "faulty manufacturing, assembly, or installation" of the windows fell within the construction-contractor exemption. *Id.* *7. Unlike this case, however, the insured had entered into a written contract to perform construction services (*i.e.*, window installation). *Id.* at *1. While window designing was excluded as a professional service, any construction work, including window installation, which was performed pursuant to a construction contract, was exempted from that exclusion. In contrast, because WSP was not contracted to perform any construction work, the claims against it in the STP action do not fall within the construction-contractor exemption.

## IV. Conclusion

For the foregoing reasons, Liberty's motion for summary judgment is GRANTED, and WSP's cross-motion for summary judgment is DENIED. Judgment is entered in favor of Liberty declaring that it is not required to defend WSP in the underlying action. The Clerk of Court is directed to close the motions at Docket Numbers 29 and 33 and to close the case.

SO ORDERED.

Dated: June 27, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

11